# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| ANTHONY VILLA, | ) 1:08CV1234 |
| | ) |
| Petitioner | ) JUDGE PATRICIA GAUGHAN |
| | ) (Magistrate Judge Kenneth S. McHargh) |
| v. | ) |
| | ) |
| PHILIP KERNES, | ) |
| Warden, | ) |
| | ) |
| Respondent | ) REPORT AND RECOMMENDED |
| | ) <u>DECISION OF MAGISTRATE JUDGE</u> |

McHARGH, MAG. J.

The petitioner Anthony Villa ("Villa") has filed a petition pro se for a writ of

habeas corpus, under 28 U.S.C. § 2254, regarding his 2005 convictions for murder,

aggravated murder, and felonious assault in the Lorain County, Ohio, Court of

Common Pleas.  (Doc. 1.) Villa raises thirteen (13) grounds for relief in his petition:

> 1.  Petitioner was denied due process, right to effective representation
> of counsel, access to courts, has suffered a manifest miscarriage of
> justice.
>
> 2.  Petitioner was denied due process, right to be present, effective
> representation and an uncoerced verdict by an impartial jury.
>
> 3.  Petitioner was denied due process, right to indictment/fair
> notice/trial by jury/unanimous verdict, a defense, and the Court was
> without subject matter jurisdiction.
>
> 4.  Petitioner was denied due process, right to confront, and right to
> defense, and B; due process, trial by jury and to have the State prove
> each element.
>
> 5.  Petitioner was denied due process, presumption of innocence, trial
> by jury, and the State was relieved of its burden.

6.  Petitioner was denied due process, fair trial (all evidence to be considered by the jury), and confrontation rights.

7.  Petitioner was denied due process, right to be present and fair trial by an impartial jury free from outside influences.

8.  Petitioner was denied due process, right to fairly empanelled jury, trial by jury free from outside influences, right to representation by counsel, and B. effective assistance of counsel.

9.  Petitioner received ineffective assistance of counsel and was denied due process, confrontation rights and compulsory process.

10.  Petitioner was denied due process and right to trial by an impartial jury.

11.  Petitioner was denied due process, right to fair trial, and confrontation rights.

12.  Petitioner was denied due process, right to present defense, and confrontation rights.

13.  Petitioner was denied due process and right to a fair trial.

(Doc. 1, § 12.)

The respondent filed a Return of Writ (doc. 26), and Villa filed a Traverse

(doc. 28).


I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

Lorain police officers arrived at Gil's Bar in the early morning hours of April 13, 2004, following a report of a shooting.  Upon arriving, officers began to question employees of the bar to gain a better understanding of the night's events.  Police questioned the following individuals: Harold Hawthorne, a security team member; Tina Curry, the owner of the bar; Ryan Smith, the bar employee who was checking IDs on the night in question; Herbert Cornwell, the head of security at the bar on

2

the date in question; Oliver Evans, another security team member at the bar; and, Patricia Danczik, a bartender at Gil's.

From these witnesses, police developed the following facts.  A young, Hispanic male attempted to enter the bar at approximately 11:00 p.m.  As he did not have identification, he was refused entry.  The male returned a few minutes later and offered to pay the owner cash in order to be admitted.  Security members then escorted the male out of the bar's entry hallway.  Upon exiting, the male attempted to punch Hawthorne and the two fought on the front porch of the bar.  Hawthorne told authorities that the male bit him on the thumb and the face, drawing blood on both.

Later on that night, at approximately 2:30 a.m., the house lights were turned on in the bar as the employees began to clean up.  Witnesses stated that two men in hooded sweatshirts entered the bar and one of the men began shooting.  Many of the employees ran for cover, and Hawthorne began chasing the men who had entered the bar.  However, before he could leave the bar, Hawthorne heard someone scream the name of his stepson.  Hawthorne turned towards the screams and realized that his stepson, Reynaldo Collins, had been shot in the forehead.  Tragically, Collins died a short time later.

Lorain Detective Dennis Moskal received two anonymous phone calls on April 13, 2004, identifying [Villa] as the perpetrator of the shooting at Gil's.  Detective Moskal then retrieved a picture of [Villa] from an offender's database and found that [Villa] fit the description supplied by the witnesses.  Detective Moskal then created a photo array using [Villa]'s photo and five other Hispanic males with similar features.  Over the next few weeks, Detective Moskal had all five eyewitnesses view the array.  Each of the five immediately identified [Villa] as the perpetrator.

As a result of the investigation, [Villa] was indicted on the following counts: one count of murder in violation of R.C. 2903.02(A); one count of murder in violation of R.C. 2903.02(B); one count of  aggravated murder in violation of R.C. 2903 .01; and one count of felonious assault in violation of R.C. 2903.11(A).  Each count in the indictment carried a firearm specification.

On June 30, 2004, [Villa] moved to suppress the eyewitnesses' identifications, asserting that the photo array was unduly suggestive.

3

Following an evidentiary hearing, [Villa]'s motion was overruled and the matter proceeded to a jury trial.

At trial, the State presented the testimony of its five eyewitnesses, each of whom placed [Villa] at the bar.  Each testified to seeing [Villa] either having fought with Hawthorne, as the shooter, or as both the shooter and the man who fought with Hawthorne.  At the conclusion of the State's case, [Villa] moved for acquittal pursuant to Crim.R. 29.  The trial court overruled the motion and [Villa] called Dr. Harvey Shulman as an expert witness.  Dr. Shulman opined that eyewitness testimony is often unreliable.  He testified at length regarding the various factors which may increase or decrease the accuracy of a witness' testimony.  [Villa] then rested and renewed his Crim.R. 29 motion, which was again overruled by the trial court.  The matter was then submitted to the jury.

During deliberations, the jury sent a note to the court stating that they were "11 to 1" and wanted to talk to the court.  The Court then spoke with counsel for both [Villa] and the State.  Following a discussion, the Court inquired further of the jury, asking "And what do you wish to talk about?"  The jury responded by informing the judge again of their numerical division and this time informing him of which side their current vote favored.  The trial court again convened the parties and informed them that the jury had again disregarded the trial court's earlier instructions and given its numerical division.  The trial court, however, informed the parties that it would not disclose the information regarding the specific nature of the jury's numerical division.  Thereafter, the parties agreed that a Howard charge was appropriate.  [Villa] moved for a mistrial on the grounds that the trial court had not disclosed the information provided by the jury.  The trial court overruled the motion and gave the Howard charge.  Thereafter, the jury returned a verdict finding [Villa] guilty on all the charges in the indictment.  [Villa] was sentenced to twenty-three years to life in prison.

(Doc. 26, RX 11, at 1-4; State v. Villa, No. 05008773, 2006 WL 2527964, at *1-*2 (Ohio Ct. App. Sept. 5, 2006).)

## A.  Direct Appeal

Villa filed a timely direct appeal of his conviction, setting forth the following seven assignments of error:

1. The trial court erred to appellant's prejudice in violation of the Fourteenth Amendment to the United States Constitution and Article One Section Sixteen of the Ohio Constitution when it denied appellant's motion to suppress improperly suggestive pretrial identification.

2. The trial court erred to appellant's prejudice in violation of the Sixth and Fourteenth Amendment[s] to the United States Constitution and Article One Sections Ten and Sixteen of the Ohio Constitution by denying appellant's motion for mistrial.

3. The trial court erred to appellant's prejudice in violation of the Sixth, and Fourteenth Amendments to the United States Constitution and Article 1 Sections 10 and 16 of the Ohio Constitution by denying appellant the opportunity to review pre-trial statements of prosecution witnesses as required by Criminal Rule 16.

4. The trial court erred to appellant's prejudice in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article One Section[s] Ten and Sixteen of the Ohio Constitution by instructing the jury on flight without clear and convincing evidence that appellant fled the jurisdiction of the court to avoid prosecution.

5. The trial court erred to the prejudice of appellant when it entered judgment of conviction, where such judgment was against the manifest weight of the evidence.

6. The trial court erred to the prejudice of appellant in violation of Criminal Rule 29 [and] Article One Section Ten of the Ohio Constitution and the Due Process Clause of the Constitution of the United States when it denied appellant's motion for acquittal.

7. Appellant was deprived of his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article One Section Ten of the Ohio Constitution.

5

(Doc. 26, RX 9.)  The court of appeals affirmed his conviction.  (Doc. 26, RX 11; Villa, 2006 WL 2527964.)

Villa filed a timely appeal pro se to the Supreme Court of Ohio, which raised the following propositions of law:

1. The due process clause prohibits the use of identification evidence when the evidence is gathered as a result of improperly suggestive pretrial identification. U.S. Const. Amend. 14; Ohio Const. I, § 16.

2. The court denied appellant his right(s) to be present, to have effective assistance of counsel, to a trial by an impartial jury and erred by denying appellant's motion for a mistrial. U.S. Const. Amend. 6 and 14; Ohio Const. I, §§ 10 and 16.

3. Denying appellant the opportunity to review witness statements violated his Due Process and confrontation rights. U.S. Const. Amend. 6 and 14; Ohio Const. I, §§ 10 and 16. Crim. R. 16(B)(1)(g).

4. Appellant was denied his right to trial by jury and Due Process when the court permitted the jury to infer guilty concerning the crime [charged] from an alleged flight without sufficient evidence showing flight, U.S. Const. Amend. 5, 6 and 14; Ohio Const. I, §§ 10 and 16.

5. / 6. Appellant was denied his right to a fair trial and Due Process when the jury entered judgment against the manifest weight of the evidence and when the trial court denied appellant's motion for acquittal. U.S. Const. Amend. 6 and 14; Ohio Const. I, § 10.

7. Appellant was deprived of his right to the effective assistance of counsel. U.S. Const. Amend. 6 and 14; Ohio Const. I, § 10.

(Doc. 26, RX 12.)  The state supreme court denied leave to appeal, and dismissed the appeal as not involving any substantial constitutional question.  (Doc. 26, RX 14; State v. Villa, 112 Ohio St.3d 1445, 860 N.E.2d 768 (2007).)  The U.S. Supreme Court denied Villa's petition for writ of certiorari on May 29, 2007.  Villa v. Ohio, 550 U.S. 973 ( 2007).

6

B.  Petition for Post-conviction Relief

While his direct appeal was pending, Villa filed a petition pro se to vacate or

set aside sentence in the trial court.  The following claims for relief were raised:

> 1. The petitioner was deprived of his right to the effective assistance of
> counsel as guaranteed by the Sixth and Fourteenth Amendments to
> the United States Constitution and Article I, Section 10 of the Ohio
> Constitution.
>
> 2. The petitioner was denied due process when the prosecution
> misrepresented to the court that the nine-page report being reviewed
> for producibility and 16 B(1)(g) purposes was the complete report and
> insisted that no other reports existed, suppressing exculpatory
> evidence, denying petitioner his right to confront the evidence against
> him in violation of the Sixth and Fourteenth Amendments to the
> United States Constitution and Article I, Section(s) 10, and 16 of the
> Ohio Constitution; the petitioner was further deprived of these rights
> when the prosecution failed to correct testimony known to be false.
>
> 3. Petitioner was denied due process when the trial court refused to
> conduct an independent in camera review of Tina Curry's interview
> with Sgt. Carpentiere, and not causing this report to be preserved in
> the record for review in violation of the Fourteenth Amendment to the
> Unites States Constitution and Article I Section 16 of the Ohio
> Constitution.
>
> 4. Petitioner was denied his Sixth and Fourteenth Amendment rights
> when the Court erroneously permitted Detective Moskal to testify to
> the petitioner's arrest; and by further instructing the jury on flight.

(Doc. 26, RX 15.)  Villa was granted leave to supplement the petition (doc. 26, RX

19), and then added the following claims as well:

> [5]. Petitioner was denied his right to a fair trial and impartial jury as
> guaranteed by the Sixth and Fourteenth Amendments of the United
> States Constitution and Article I §10 and §5 of the Ohio Constitution.
> Petitioner was also denied the effective assistance of counsel as
> guaranteed by the Sixth and Fourteenth Amendments to the United
> States Constitution and Article I § 10 of the Ohio Constitution.

7

[6]. Petitioner was deprived of the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §10 of the Ohio Constitution. Petitioner further asserts actual innocence of the crimes charged.

(Doc. 26, RX 20.)

The trial court denied the petition as untimely.  (Doc. 26, RX 23.)  Villa appealed that judgment to the state court of appeals, arguing:

The Trial Court erroneously calculated the 180 day statute of limitations for filing a petition under O.R.C. 2953.21 to begin from the date on which the transcripts were filed in the trial court by the Court Reporter; rather than the date on which they were filed in the court of appeals as provided by O.R.C. 2953.21(A)(2).

(Doc. 26, RX 25.)  The court of appeals affirmed the judgment of the trial court.

(Doc. 26, RX 27; State v. Villa, No. 08CA009484, 2009 WL 3068397 (Ohio Ct. App. Sept. 28, 2009).)  Villa did not appeal that decision further.

## C.  Application to Reopen

Villa also filed a "application for reconsideration 26(B)," which the court treated as an application to reopen his appeal, pursuant to Ohio App. Rule 26(B), raising the following fourteen claims:

1. Appellant was denied the effective assistance of appellate counsel and did not receive full or fair review of judgment, U.S. Const. Amendment 14, Ohio Const. Article I, § 16.

2. The trial court erred when it denied appellant's motion to exclude impermissibly suggestive and unreliable identification, U.S. Const. Amendment 6, 14 and Ohio Const. Article I, §§ 10,16.

3. The State failed to meet its burden of proof (persuasion) and the jury erred when it entered verdict of guilt against appellant, U.S. Constitution Amendments 6, 14; Ohio Const. Art. I §§ 10, 16.

8

4. Appellant was denied due process when the State withheld witness statements and when the court failed to independently preview and preserve the statements in the record, U.S. Const. Amendments 6, 14, Ohio Const. Amendments 6, 14, Ohio Constitution Art. I, §§10, 16.

5. Appellant was denied due process and right to be present at every critical state of the proceedings, U.S. Const. Amendments 6, 14; Ohio Const. Art. I, §§ 10, 16.

6. Appellant was denied his right to confront when the court elicited untested hearsay identification testimony, U.S. Const. Amendment 6, Ohio Constitution Art. I, § 10.

7. Appellant was denied his confrontation rights when the court prevented counsel from examining witnesses, U.S. Const. Amendment 6, Ohio Const. Art. I, § 10.

8. Appellant was denied due process, his right to confront, and right to trial by jury when the court allowed Detective Moskal to testify to appellant's arrest and by allowing the jury to infer guilt from flight, U.S. Const. Amendments 6, 14, Ohio Constitution Art. I, §§ 5, 10 and 16.

9. Appellant was denied his right not to be held to answer for a crime except upon indictment, right to trial by jury, and due process when the court misinstructed the jury, U.S. Const. Amendment 5, 6, 14 and Ohio Constitution Art. I, §§ 5, 10, 16.

10. Appellant was denied his right to trial by jury and due process, U.S. Const. Amend. 6, 14, Ohio Const. Art. I, §§5, 10, 16.

11. The States egregious comments during closing arguments deprived appellant of due process, U.S. Const. Amendments 5, 14; Ohio Const. Art. I, §§10, 16.

12. Appellant was denied due process, right to be present at every critical stage of the proceeding, the effective assistance of counsel and right to an uncoerced verdict of the jury. U.S. Const. Amendment 14 and Ohio Constitution Art. I, §§ 5, 10, 16.

13. Appellant was denied his right to the effective assistance of trial counsel. U.S. Const. Amendments 6, 14; Ohio Const. Art. I, §10.

9

14. Appellant was denied a fair trial and due process as a result of multiple prejudicial occurrences, U.S. Const. Amendment 6, 14 and Ohio Constitution Art. I, §§ 10, 16.

(Doc. 26, RX 28, 30.)  The court of appeals denied his application as untimely.  (Doc. 26, RX 33.)

Villa filed a notice of appeal to the Supreme Court of Ohio, setting forth the following proposition of law:  "Appellant was denied Due Process and the Effective Assistance of Appellate Counsel and did not receive fair review of the judgment." (Doc. 26, RX 35.)

The state supreme court dismissed the appeal as not involving any substantial constitutional question.  (Doc. 26, RX 37; State v. Villa, 114 Ohio St.3d 1428, 868 N.E.2d 681 (2007).)

### D.  Federal Petition for Writ of Habeas Corpus

Villa filed a timely petition for writ of habeas corpus.  Villa subsequently moved for a stay and abeyance of his petition, to allow him to exhaust his state remedies, and the court granted the stay.  (Doc. 3, 6.)  After about fourteen months, the court dismissed the petition without prejudice, pending exhaustion.  (Doc. 15.) About a year after that, the court granted Villa's motion to reopen the case.  (Doc. 16.)

The respondent then filed a Return of Writ (doc. 26), and Villa filed a Traverse (doc. 28).

## II. HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court. The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002). See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405. See also Price v. Vincent, 538 U.S. 634, 640 (2003).

11

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Wogenstahl v. Mitchell, 668 F.3d 307, 340 (6th Cir. 2012).  Thus, where the state high court denies review without comment, this court looks to the appellate court opinion as the last reasoned state court decision which was decided on the merits.  Wogenstahl, 668 at 339-340; Custer v. Hill, 378 F.3d 968, 972 n.4 (9th Cir. 2004); Rosario v. Burge, 542 F.Supp.2d 328, 340 (S.D. N.Y. 2008).

Villa has filed his petition pro se.  The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed.  Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)).  Other than that, no special treatment is afforded litigants who decide to proceed pro se.  McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

## III.  PROCEDURAL DEFAULT

The respondent contends that the first, third, fifth, sixth, seventh, eighth, twelfth and thirteenth grounds of the petition are procedurally defaulted.  See generally doc. 26.

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)).  A petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.  Coleman, 501 U.S. at 731-732; Buell, 274 F.3d at 349.

Where a state court has failed to address a prisoner's federal claim(s) because the prisoner failed to meet a state procedural requirement, the state judgment rests on independent and adequate state procedural grounds, barring federal habeas relief.  Coleman, 501 U.S. at 729-730; Wainwright v. Sykes, 433 U.S. 72 (1977); Morales v. Coyle, 98 F.Supp.2d 849, 860 (N.D. Ohio 2000), aff'd, 507 F.3d 916 (6th

13

Cir. 2007). Thus, where a state prisoner has procedurally defaulted his federal claims in state court, habeas review of those claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Buell, 274 F.3d at 348 (quoting Coleman, 501 U.S. at 750); Davie v. Mitchell, 324 F.Supp.2d 862, 870 (N.D. Ohio 2004), aff'd, 547 F.3d 297 (6th Cir. 2008), cert. denied, 103 S.Ct. 503 (2009).

The court considers four factors to determine whether a claim has been procedurally defaulted:  (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim, and whether the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the procedural sanction; (3) the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of the federal claim; and, (4) the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. Buell, 274 F.3d at 348 (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)); Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir. 2001) (quoting Maupin).

### A.  Ineffective Assistance of Counsel

The first claim of the petition is ineffective assistance of appellate counsel, arguing that counsel submitted a deficient brief, among other things.  The respondent argues that the first ground has been procedurally defaulted because

the court of appeals denied Villa's Rule 26(B) application as untimely.  (Doc. 26, at 20-22.)

The Ohio Supreme Court has held that "issues of ineffective assistance of appellate counsel must be raised at the first opportunity to do so."  Monzo v. Edwards, 281 F.3d 568, 578 (6th Cir. 2002) (quoting State v. Williams, 74 Ohio St.3d 454, 455, 659 N.E.2d 1253, 1254 (1996) (per curiam)).  Under Ohio law, claims of ineffective assistance of appellate counsel must be raised in a motion to re-open the appeal before the Ohio Court of Appeals.  Monzo, 281 F.3d at 577 (citing State v. Murnahan, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992)); Ohio App. R. 26(B).  Such a motion must be filed in the court of appeals within 90 days of the appellate judgment.  State v. Lamar, 102 Ohio St.3d 467, 468, 812 N.E.2d 970 (2004) (per curiam), cert. denied, 543 U.S. 1168 (2005); State v. Reddick, 72 Ohio St. 3d 88, 90, 647 N.E.2d 784, 786 (1995) (per curiam).  Villa did not file a timely motion to re-open.

Villa filed his application on Feb. 1, 2007.  (Doc. 26, RX 28, 30.)  Villa's Rule 26(B) application was rejected by the state court of appeals as untimely.  (Doc. 26, RX 33.)  The court noted that the appellate judgment was entered on Sept. 5, 2006, and his application would have been timely if filed within ninety days.  Id.  The court found that Villa had not established good cause to excuse his untimely filing. Id. at 2.

Rule 26(B)'s 90-day filing period is a state procedural rule applicable to Villa's claim, and the state court found that Villa failed to comply with the

15

timely-filing provision.  The state court enforced the procedural sanction by denying his application for reopening.  The Sixth Circuit has found that this is an adequate state procedural ground.  Smith v. Ohio, Dept. of Rehab. & Corr., 463 F.3d 426, 436 n.7 (6th Cir. 2006); Monzo, 281 F.3d at 577-578.

Any ineffective-assistance claims that Villa could have properly asserted, but did not, are defaulted under the Ohio doctrine of res judicata.[1]  Jacobs, 265 F.3d at 417; Coleman, 244 F.3d at 538; State v. Perry, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967) (syllabus, ¶9).  If a petitioner is barred by a state procedural rule from raising a federal claim in state court, he is not permitted to raise the issue in his habeas petition absent a showing of cause and prejudice.  Engle v. Isaac, 456 U.S. 107, 129 (1982); Wainwright, 433 U.S. at 86-87.

Application of the Ohio rule of res judicata satisfies the first three factors in Maupin.  Jacobs, 265 F.3d at 417.  The fourth factor is that the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

"Cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" which impeded the petitioner's efforts to comply with the state's procedural rule.  Coleman, 501 U.S. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  In his Traverse, Villa does not argue cause.  (Doc. 28, at 3-4.)

Instead, Villa argues that procedural default is not applicable here, because:

---

[1]  Villa has also raised a claim of ineffective assistance of trial counsel, as his ninth ground for relief.  That claim will be addressed separately, below.

"If [appellate counsel] Cabrera's performance were the issue, the default would apply – but it is not." (Doc. 28, at 3.)  Villa contends that it was the state court's actions which "unfairly divested [him] of the right to appeal." Id. at 3-4.  His brief in support of his Rule 26(B) application did, in fact, raise ineffective assistance of appellate counsel, as does the first ground of his habeas petition. See doc. 26, RX 28, at 3-4.  He also attempted to raise due process concerns about the court's rulings. Id. at 4.  These other issues would not have been considered by the state court of appeals.

Under Ohio law, a Rule 26(B) motion for reopening is limited to claims of ineffective assistance of appellate counsel.  Ohio R. App. P. 26(B)(1).  The state courts will not entertain other claims.  See State v. Goines, 74 Ohio St.3d 409, 410, 659 N.E.2d 787 (1996) (per curiam) (claimed errors not related to ineffective assistance of appellate counsel are disregarded); State v. Cook, No. WD-04-029, 2005 WL 1926517, at *4 (Ohio Ct. App. Aug. 10, 2005) (claim of ineffective assistance of trial counsel improper basis for Rule 26(B) motion); State v. Huber, No. 80616, 2003 WL 21419177, at *2 (Ohio Ct. App. June 18, 2003) (same).

Villa has not demonstrated cause for his failure to file a timely application.  Because Villa has not shown cause, it is unnecessary to consider the issue of prejudice. Murray, 477 U.S. at 494; Shabazz v. Ohio, 149 F.3d 1184, 1998 WL 384559, at *1 (6th Cir. June 18, 1998) (TABLE, text in WESTLAW).  Absent a showing of cause and prejudice to excuse the procedural default, the court will not

17

review the merits of the claim.  Lott v. Coyle, 261 F.3d 594, 611-612 (6th Cir. 2001), cert. denied, 534 U.S. 1147 (2002).

The ineffective assistance of appellate counsel claim has been procedurally defaulted.   The petition should not be granted on the basis of the first ground because it was procedurally defaulted in the state courts.

## B.  Faulty Indictment

The third ground of the petition claims a due process violation, specifically:

> Petitioner's indictment charged in the same count (among other charges) one count each of:  Felonious Assault [Ohio Rev. Code §§ ] 2903.11, Subdivision (A)(1) and (A)(2); in which the "knowingly" element was omitted from Subdivision (A)(1).  In the Court's instructions, the "knowingly" element was added to Subdivision (A)(1) while omitted from (A)(2); and omitted from both in a later instruction. The court also added an element to murder O.R. C. 2903.02(B). Recklessness also omitted and not proved (required).

(Doc. 1, § 12.C.)  The respondent asserts that this claim was procedurally defaulted, because it was not raised on direct appeal.  (Doc. 26, at 27-28.)

Villa did not raise this claim before the Ohio Court of Appeals.  See generally doc. 26, RX 9, 12.  This court does not have jurisdiction to consider a federal claim in a habeas petition which was not fairly presented to the state courts.  Baldwin v. Reese, 541 U.S. 27 (2004); Jacobs, 265 F.3d at 415.  Where the petitioner failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim. Adams v. Bradshaw, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007) (citing Buell, 274 F.3d at 349).

Because this claim was not raised on direct appeal, it would be barred by the Ohio rule of res judicata.  Lott, 261 F.3d at 611-612; Rust, 17 F.3d at 160-161; State v. Szefcyk, 77 Ohio St.3d 93, 671 N.E.2d 233 (syllabus); Perry, 10 Ohio St.2d at 176, 226 N.E.2d at  105-106 (syllabus, ¶9).  Res judicata would bar Villa from litigating an issue that could have been raised on direct appeal.  Perry, 10 Ohio St.2d at 180, 226 N.E.2d at 108.  See also Seymour v. Walker, 224 F.3d 542, 555 (6th Cir. 2000), cert. denied, 532 U.S. 989 (2001) (Ohio rule that claims must be raised on direct appeal if possible; otherwise, res judicata bars litigation in subsequent proceedings).

Application of the Ohio rule of res judicata satisfies the first three factors in Maupin.  Jacobs, 265 F.3d at 417.  The fourth factor is that the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

"Cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" which impeded the petitioner's efforts to comply with the state's procedural rule.  Coleman, 501 U.S. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  In his Traverse, Villa does not argue cause.  (Doc. 28, at 8.)

Instead, Villa asserts that the state's actions waived the procedural default.  (Doc. 28, at 8.)  He claims that the court of appeals "refused counsel opportunity to represent Petitioner."  Id.  He argues that the state court "den[ied] counsel any input in Appellant's brief, which was submitted by counsel who had been dismissed months prior to the decision."  Id. at 2.  Villa does not provide details to support this aspect of his claim.

Reference to the docket of the state court of appeals shows that Villa was represented on direct appeal by Attorney Robert Cabrera. Appellant's brief was filed on March 2, 2006. See doc. 26, RX 9 (brief on appeal), RX 39 (appellate docket). The brief in opposition was filed on March 17, 2006. See doc. 26, RX 10, 39.

On March 27, 2006, Villa pro se sent a letter and motion to the court, seeking a stay of the proceedings. The court denied the pro se motion on March 28, stating "When counsel is appointed, an appellant does not have the right to counsel of his choice." Subsequently, on May 19, 2006, counsel Cabrera filed a motion to withdraw, which was granted by the court on May 30, stating that Kenneth Ortner was now counsel for appellant. On June 23, oral argument was scheduled for August 10. On July 18, 2006, a motion to supplement appellant's brief was filed, but the motion was denied on July 31. See doc. 26, RX 39 (appellate docket). The court of appeals affirmed the conviction on Sept. 5, 2006. (Doc. 26, RX 11, 39; Villa, 2006 WL 2527964.)

In sum, Villa was represented by counsel on direct appeal. After the briefing was completed, his counsel withdrew and new counsel represented Villa. The state court of appeals did not allow new counsel to supplement the already filed brief on appeal, to which the state had already responded. Villa does not identify a specific constitutional violation in this series of events, nor does he provide any authority for the proposition that the state court's denial of his motion to supplement his

brief, after briefing was completed, violates due process, or would serve to waive his procedural default as to the third ground.

The third claim, concerning the indictment, has been procedurally defaulted. The petition should not be granted on the basis of the third ground because it was procedurally defaulted in the state courts.

## C.  Prosecutorial Misconduct

The fifth ground of the petition is based on prosecutorial misconduct, alleging that the prosecutor in closing misstated the law, misrepresented evidence, and commented on matters requiring expert knowledge.  (Doc. 1, at p. A-1.)

The respondent asserts that this claim was procedurally defaulted as well, because it was not raised on direct appeal.  (Doc. 26, at 34-35.)  Villa again asserts that the state's actions waived the procedural default, on the same basis which the court has already rejected above.  (Doc. 28, at 8.)

Villa did not raise this claim on direct appeal before the Ohio Court of Appeals.  See generally doc. 26, RX 9, 12.  Because this claim was not raised on direct appeal, it would be barred by the Ohio rule of res judicata.  Lott, 261 F.3d at 611-612; Rust, 17 F.3d at 160-161; Szefcyk, 77 Ohio St.3d 93, 671 N.E.2d 233 (syllabus); Perry, 10 Ohio St.2d at 176, 226 N.E.2d at  105-106 (syllabus, ¶9).  Res judicata would bar Villa from litigating an issue that could have been raised on direct appeal.  Perry, 10 Ohio St.2d at 180, 226 N.E.2d at 108.  See also Seymour, 224 F.3d at 555.

Although Villa may have attempted to raise this issue in his untimely Rule 26(B) motion, that procedure is limited to claims of ineffective assistance of appellate counsel.  Ohio R. App. P. 26(B)(1).  The state courts will not entertain other claims.  See Goines, 74 Ohio St.3d at 410, 659 N.E.2d 787; Cook, 2005 WL 1926517, at *4; Huber, 2003 WL 21419177, at *2.

The fifth claim, concerning prosecutorial misconduct, has been procedurally defaulted.   The petition should not be granted on the basis of the fifth ground because it was procedurally defaulted in the state courts.

### D.  Withheld Evidence

The sixth ground of the petition is that the state improperly withheld evidence material to Villa's defense, specifically:  ". . . (reports on bullet testing, reports on Patricia Dancik's computer identification, etc.); Exculpatory evidence (Tina Curry's statement, statements/names of witnesses known to Officers Lacock and Hendershot describing different versions/descriptions of the events/suspects)."  (Doc. 1, at p. A-1.)

The respondent once again asserts that this claim was procedurally defaulted, because it was not raised on direct appeal.  (Doc. 26, at 35-37.)

On direct appeal, Villa argued that "the trial court did not permit defense counsel to review the pre-trial statements of prosecution witnesses for inconsistencies as required by [Ohio] Crim.R. 16(B)(1)(g)."  (Doc. 26, RX 9, at 13.) Villa argued that evidence relating to the reliability of the identification process was a key issue in the case, and counsel had therefore requested the opportunity to

22

examine the detectives' narrative reports.  Id. at 14.  The trial court had ruled that the police incident reports were not witness "statements" subject to disclosure.  Id. at 15.  The court of appeals also ruled that the police incident reports were not subject to discovery as they "did not constitute statements of the individual witnesses as summarized by the detectives." (Doc. 26, RX 11, at 12; Villa, 2006 WL 2527964, at *6.)  On direct appeal, Villa did not raise the issue of bullet testing, Dancik's computer identification, or the issue of any undisclosed names of witnesses known to the police.  The court agrees that this claim has been procedurally defaulted, as to those specific issues.

However, the court finds that Villa's assignment of error on direct appeal, namely that "the trial court did not permit defense counsel to review the pre-trial statements of prosecution witnesses for inconsistencies as required by [Ohio] Crim.R. 16(B)(1)(g)" (doc. 26, RX 9, at 13), would encompass his habeas claim concerning Tina Curry's statement, and "statements . . . of witnesses known to [the police] describing different versions/descriptions of the events/suspects."  The court finds that this issue, concerning pre-trial statements of prosecution witnesses, was raised on direct appeal.

The court of appeals ruled on the claim as follows:

In his third assignment of error, Appellant contends that the trial court erred when it found that incident reports prepared by the investigating officers were not statements under Crim.R. 16.  This Court disagrees.

Initially, we note that Appellant has not identified any portion of the record which would support his third assignment of error.  He,

23

therefore, has not followed the dictates of App.R. 16(A)(7). Even ignoring the deficiency in Appellant's brief, his claim still must fail.

Crim.R. 16(B)(1)(g) provides in pertinent part as follows:

> "Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement."

The initial question before the trial court, therefore, was whether the police reports sought by Appellant were producible "witness statements" within the meaning of Crim.R. 16(B)(1)(g). State v. Daniels (1982), 1 Ohio St.3d 69, 437 N.E.2d 1186, syllabus. Upon review, we find that the incident reports are not "witness statements" and thus were not subject to disclosure.

The Ohio Supreme Court has rejected the argument raised by Appellant that the incident reports should be considered "witness statements" under Crim.R. 16(B)(1)(g). In State v. Cunningham, 105 Ohio St.3d 197, 824 N.E.2d 504, 2004-Ohio-7007, the Court was asked to determine whether incident reports qualified as "witness statements" under Crim.R. 16. The Court held as follows:

> "In State v. Jenkins (1984), 15 Ohio St.3d 164, 473 N.E.2d 264, * * * we considered whether police reports constitute statements discoverable under Crim.R. 16(B)(1)(g). We ruled that those portions of police reports recording the officer's personal observations and recollections of the events are subject to scrutiny under Crim.R. 16(B)(1)(g), stating:

> "Clearly, a signed written statement of a state witness would serve the purpose of Crim.R. 16(B)(1)(g) and fall within the plain meaning of the word statement, just as would a recording of the witness' words or a transcription thereof. We see no reason why the mere fact that the document was a report of a police officer would automatically bar its disclosure.

> "In Jenkins, we specifically excluded from discovery other portions of a police officer's report, including statements from other witnesses contained therein.  This is not to say that all portions of a police report are discoverable under Crim.R. 16(B)(1)(g).  Reading this section in pari materia with Crim.R. 16(B)(2), it becomes apparent that those portions of a testifying police officer's signed report concerning his observations and recollection of the events are statements within the meaning of Crim .R. 16(B)(1)(g).  Those portions which recite matters beyond the witness' personal observations, such as notes regarding another witness' statement or the officer's investigative decisions, interpretations and interpolations, are privileged and excluded from discovery under Crim.R. 16(B)(2)." Id. at ¶ 41-43, 473 N.E.2d 264. (Internal citations, quotations and emphasis omitted.)

Based on Cunningham and our review of the reports, the trial court did not err in finding that the incident reports prepared did not constitute statements of the individual witnesses as summarized by the detectives.  Appellant sought the reports based upon the information the officers detailed in them regarding witness statements.  Cunningham squarely held that those portions are not producible statements.  Appellant did not seek the reports on the basis that they contained the officer's personal observations and recollection of events; discoverable statements under Cunningham.  Accordingly, Appellant's third assignment of error is overruled.

(Doc. 26, RX 11, at 11-13; Villa, 2006 WL 2527964, at *5-*6.)

The court of appeals analyzed his claim under state law, and the main thrust of his argument in the brief in support of the assignment of error was that the trial court had violated Ohio Criminal Rule 16.  See generally doc. 26, RX 9, at 13-16. Although the caption of the third assignment of error claimed that the trial court violated the Sixth and Fourteenth Amendments (doc. 26, RX 9, at 13), the argument in support did not argue such violations, merely a misapplication of Rule 16.  In the

last sentence of his argument, Villa mentions in passing that his rights to

confrontation and due process were thus violated.  Id. at 16.

This court would not have jurisdiction to consider a federal claim in a habeas

petition which was not fairly presented to the state courts.  Baldwin, 541 U.S. 27;

Jacobs, 265 F.3d at 415.  The Sixth Circuit has stated:

> A claim may only be considered "fairly presented" if the petitioner
> asserted both the factual and legal basis for his claim to the state
> courts.  This court has noted four actions a defendant can take which
> are significant to the determination whether a claim has been "fairly
> presented":  (1) reliance upon federal cases employing constitutional
> analysis;  (2) reliance upon state cases employing federal constitutional
> analysis;  (3) phrasing the claim in terms of constitutional law or in
> terms sufficiently particular to allege a denial of a specific
> constitutional right;  or (4) alleging facts well within the mainstream
> of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), cert. denied, 532 U.S. 958

(2001).  To "fairly present" the claim to the state courts, a habeas petitioner must

present his claim as a federal constitutional issue, not as an issue arising under

state law.  Koontz v. Glossa, 731 F.2d 365, 368 (6th Cir. 1984).

Although Villa did not rely on federal cases employing constitutional

analysis, or upon state cases employing federal constitutional analysis, the issue of

pretrial discovery in a criminal case does involve constitutional issues.  The Sixth

Circuit in Bonnell v. Mitchell has summarized the state's disclosure obligations:

> In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215
> (1963), the United States Supreme Court imposed upon the
> prosecution in a criminal case the "obligation to turn over material
> that is both favorable to the defendant and material to guilt or
> punishment."  United States v. Bencs, 28 F.3d 555, 560 (6th Cir.1994).
> "Moreover, it is well-settled that this disclosure obligation includes

26

evidence that could be used to impeach the credibility of a witness." Schledwitz v. United States, 169 F.3d 1003, 1011 (6th Cir.1999) (citing Giglio v. United States, 405 U.S. 150, 154–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)).  Nevertheless, a Brady violation will not result in a new trial for a criminal defendant unless the court concludes that the improperly withheld evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

Bonnell v. Mitchell, No. 04-3301, 2007 WL 62628, at *3 (6th Cir. Jan. 8, 2007), cert. denied, 552 U.S. 1064 (2007).

In Bonnell, for example, the petitioner challenged his conviction in habeas. Bonnell alleged that the prosecution suppressed police reports "that would have established the existence of conflicting statements given to the police by eyewitnesses to the murder."  Bonnell, 2007 WL 62628, at *5.  However, the court noted that defense counsel was able to cross-examine the two witnesses about the alleged inconsistencies in the identification of the murderer.  "Consequently, the petitioner was not prejudiced in any way by the non-disclosure of the alleged impeachment evidence."  Id.

Because the state court here did not rely on federal cases in reaching its decision, this court must determine whether the state court's decision was contrary to clearly established federal law, as determined by the Supreme Court of the United States.  A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  It is Villa's burden to establish that the state court decisions were contrary to, or involved an

unreasonable application of, clearly established federal law. Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011); Hyberg v. Milyard, No. 11–1188, 2011 WL 3605793, at *2 (10th Cir. Aug. 17, 2011), petition for cert. filed (Oct. 25, 2011) (No. 11-8773); Cockream v. Jones, No. 08-1992, 2010 WL 2587943, at *3 (6th Cir. June 29, 2010).

The state court, following state law, ruled that the police incident reports were not discoverable. Habeas relief is not available for a claimed violation of state law. Lewis v. Jeffers, 497 U.S. 764, 780 (1990). Villa has not identified any Supreme Court precedent which was contradicted by the state court's ruling. See generally doc. 28, at 9-10; doc. 1, at p. A-1.

As Villa concedes, his claim is based on mere "speculation" (doc. 28, at 9) that the incident reports might contain information that is both favorable to him and material to his guilt, or that they include something that might be used to impeach the credibility of a witness. Here, as in Bonnell, defense counsel had the opportunity to cross-examine Curry (as well as other eyewitnesses) about any alleged inconsistencies in the identification. See, e.g., doc. 26, Trial Tr., at 561-590. See Bonnell, 2007 WL 62628, at *5; see also Jalowiec v. Bradshaw, 657 F.3d 293, 313 (6th Cir. 2011). Villa has not shown that the allegedly improperly withheld evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Bonnell, 2007 WL 62628, at *5 (quoting Kyles, 514 U.S. at 435); see also Jalowiec, 657 F.3d at 313.

28

Although the court finds that the sixth ground was presented to the state courts, in part, Villa has failed to carry his burden to show that the state court's decision was contrary to clearly established federal law, as determined by the Supreme Court of the United States.  The petition should not be granted on the basis of the sixth ground.

### E.  Improper Influence on Jury (I)

The seventh ground of the petition is based on allegedly improper outside influence on the jury, and the trial court's failure to rectify this.  Villa contends that members of the public in attendance at trial wore "clothing with various pictures of the decedent, insignia referencing his death, or other memorabilia."  (Doc. 1, at p. A-1.)

The respondent asserts that this claim was procedurally defaulted, because it was not raised on direct appeal.  (Doc. 26, at 37-38.)

Villa did not raise this claim on direct appeal before the Ohio Court of Appeals.  See generally doc. 26, RX 9.  Because this claim was not raised on direct appeal, it would be barred by the Ohio rule of res judicata.  Lott, 261 F.3d at 611-612; Rust, 17 F.3d at 160-161; Szefcyk, 77 Ohio St.3d 93, 671 N.E.2d 233 (syllabus); Perry, 10 Ohio St.2d at 176, 226 N.E.2d at  105-106 (syllabus, ¶9).  Res judicata would bar Villa from litigating an issue that could have been raised on direct appeal.  Perry, 10 Ohio St.2d at 180, 226 N.E.2d at 108.  See also Seymour, 224 F.3d at 555.

29

Although Villa may have attempted to raise this issue in his untimely Rule 26(B) motion, that procedure is limited to claims of ineffective assistance of appellate counsel.  Ohio R. App. P. 26(B)(1).  The state courts will not entertain other claims.  See Goines, 74 Ohio St.3d at 410, 659 N.E.2d 787; Cook, 2005 WL 1926517, at *4; Huber, 2003 WL 21419177, at *2.

The seventh ground, concerning allegedly improper outside influence on the jury, has been procedurally defaulted.   The petition should not be granted on the basis of the seventh ground because it was procedurally defaulted in the state courts.

### F.  Improper Influence on Jury (II)

The eighth ground of the petition is also based on allegedly improper outside influence on the jury.  Villa claims that, while he was awaiting trial, several members of the jury pool were brought into his housing area of the county jail on tour, where he was clothed in jail garb within their view.  He also contends that counsel was ineffective for failing to pursue this issue.  (Doc. 1, at p. A-2.)

The respondent asserts that this claim was procedurally defaulted, because it was raised in his untimely post-conviction petition.  (Doc. 26, at 38.)  The respondent also contends that this claim was investigated, and found to be factually false.  (Doc. 26, at 38; citing doc. 26, RX 22, at 11-12 (state's opposition to postconviction petition).)

Villa did not raise this claim on direct appeal.  See doc. 26, RX 9.  Because the claim was not raised, it is barred by the Ohio rule of res judicata.

30

Although Villa attempted to raise this claim in his petition for post-conviction relief, the state court denied his untimely petition.  (Doc. 26, RX 23.)  If a post-conviction relief petition is filed beyond the 180-day time limitation, Section 2953.23(A) precludes the trial court from entertaining the petition, except in the cases of two exceptions which do not apply to Villa's petition.  Ohio Rev. Code § 2953.21(A).  In addition, "Ohio has a rule that claims must be raised on direct appeal if possible; otherwise, res judicata bars their litigation in subsequent state proceedings."  Lundgren v. Mitchell, 440 F.3d 754, 765 (6th Cir. 2006) (quoting Seymour, 224 F.3d at 555).

The Ohio rule of res judicata satisfies the first three factors in Maupin.  Jacobs, 265 F.3d at 417.  The fourth factor is that the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

Villa does not demonstrate cause for his failure to file a timely postconviction petition.  See generally doc. 28.  Although ineffective assistance of counsel could serve as cause to overcome procedural default, Smith, 463 F.3d at 432 (citing Deitz v. Money, 391 F.3d 804, 809 (6th Cir. 2004)), Villa has procedurally defaulted that claim, as discussed earlier.  An ineffective assistance of counsel claim asserted as cause for another procedurally defaulted federal claim can itself be procedurally defaulted.  Edwards v. Carpenter, 529 U.S. 446, 453 (2000).

Villa has not demonstrated cause for his failure to file a timely application.  Because Villa has not shown cause, it is unnecessary to consider the issue of

prejudice.  Murray, 477 U.S. at 494; Shabazz, 1998 WL 384559, at *1.  Absent a

showing of cause and prejudice to excuse the procedural default, the court will not

review the merits of the claim.  Lott, 261 F.3d at 611-612.

 This claim has been procedurally defaulted.  The petition should not be

granted on the basis of the eighth ground because it was procedurally defaulted in

the state courts.

G.  Due Process Violation (I)

 The twelfth ground of the petition claims that Villa's Due Process rights, and

his right to a fair trial, were violated, namely:  "Petitioner was precluded from

presenting to the jury material evidence of Harold Hawthorne's coercion of Patricia

Dancik, and in mitigation of Petitioner's alleged flight."  (Doc. 1, at p. A-3.)

 The respondent asserts that this claim was procedurally defaulted, because it

was not raised on direct appeal.  (Doc. 26, at 54-56.)

 Villa did not raise this claim before the state court of appeals.  See generally

doc. 26, RX 9.  This court does not have jurisdiction to consider a federal claim

which was not fairly presented to the state courts.  Baldwin, 541 U.S. 27; Jacobs,

265 F.3d at 415.  Because this claim was not raised on direct appeal, it would be

barred by the Ohio rule of res judicata.  Lott, 261 F.3d at 611-612; Rust, 17 F.3d at

160-161; Szefcyk, 77 Ohio St.3d 93, 671 N.E.2d 233 (syllabus); Perry, 10 Ohio St.2d

at 176, 226 N.E.2d at 105-106 (syllabus, ¶9).  Res judicata would bar Villa from

litigating an issue that could have been raised on direct appeal.  Perry, 10 Ohio

St.2d at 180, 226 N.E.2d at 108.  See also Seymour, 224 F.3d at 555.

32

The twelfth ground has been procedurally defaulted.  The petition should not be granted on the basis of the twelfth ground because it was procedurally defaulted in the state courts.

### H.  Due Process Violation (II)

The thirteenth ground of the petition also claims that Villa's Due Process rights, and his right to a fair trial, were violated, namely:  "The cumulative effects of the above errors such as the Court's elicitation of hearsay identification testimony, and other prejudicial occurrences operated to provide Petitioner a trial devoid of fundamental fairness."  (Doc. 1, at p. A-3.)

The respondent asserts that this claim was procedurally defaulted, because it was not raised on direct appeal.  In addition, the respondent points out that such claims are not cognizable for habeas relief.  (Doc. 26, at 56-57.)

Villa did not raise this claim before the state court of appeals.  See generally doc. 26, RX 9.  More importantly, the respondent is correct that, under Sixth Circuit precedent, claims of cumulative error are not cognizable in a habeas proceeding.  See, e.g., Hoffner v. Bradshaw, 622 F.3d 487, 513 (6th Cir. 2010), cert. denied, 131 S.Ct. 2117 (2011) (citing Moore v. Parker, 425 F.3d 250, 256 (6th Cir. 2005), cert. denied, 549 U.S. 1027 (2006)); Rafferty v. Hudson, No. 5:08CV1973, 2009 WL 2151832, at *8 (N.D. Ohio July 14, 2009).

The petition cannot be granted on the basis of the thirteenth ground.

I.  Summary, as to Procedural Default

The first, third, fifth, sixth (in part), seventh, eighth, twelfth, and thirteenth grounds of the petition have been procedurally defaulted.  The petition should not be granted on the basis of these grounds.

Although the sixth ground was presented to the state courts, in part, Villa has failed to carry his burden to show that the state court's decision on that issue was contrary to clearly established federal law.  The petition should not be granted on the basis of the sixth ground.

The thirteenth ground, alleging a claim of cumulative errors, is not cognizable in a habeas proceeding.

IV.  REVELATION OF DIVISION OF DELIBERATING JURY

The second ground of the petition is that Villa was denied due process and an uncoerced verdict by an impartial jury.  (Doc. 1, at §12.B.)  In support of this ground, Villa states:

> During deliberations, the Court received a note from the jury, which lead to communications where the court learned the jury's precise vote. (The circumstances of this communication are unknown as the proceedings went off-record briefly, and took place outside of the courtroom and was not disclosed to counsel or preserved in the record.) The Court issued a verdict urging instruction and shortly after the jury returned guilty verdicts on all counts.

(Doc. 1, at §12.B.)  The respondent contends that this claim should be denied.  (Doc. 26, at 22.)

On direct appeal, Villa's second assignment of error was:

The trial court erred to appellant's prejudice in violation of the Sixth and Fourteenth Amendment[s] to the United States Constitution and Article One Sections Ten and Sixteen of the Ohio Constitution by denying appellant's motion for mistrial.

(Doc. 26, RX 9.)  The court of appeals rejected his argument, ruling as follows:

A trial court's ruling on a motion for a mistrial will be reversed only for an abuse of discretion. See State v. Stewart (1996), 111 Ohio App.3d 525, 533, 676 N.E.2d 912. An abuse of discretion is more than a mere error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. State v. Smith, 9th Dist. No. 22550, 2006-Ohio-158, at ¶ 9. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

"Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1. Thus, the essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely or materially affected. State v. Nichols (1993), 85 Ohio App.3d 65, 69, 619 N.E.2d 80.

In his assignment of error, Appellant contends that the trial court erred when it did not declare a mistrial once it received information from the jury regarding its numerical division. We disagree.

If a trial judge questions a jury regarding its numerical division, the jury's verdict must be reversed. Brasfield v. U.S. (1926), 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345. We agree, however, with our sister district that the trial court's receipt of such information, when it is unsolicited and contrary to the trial court's instructions, is not in and of itself error. State v. Trussell (May 16, 1979), 2d Dist. No. 5927, at *8 ("Since the trial judge had not involved himself in obtaining this forbidden information, there was no error.") While we note that the trial judge herein asked the jury to clarify an earlier statement, he in no manner asked the jury for its numerical division. Rather, in earlier instructions he explicitly informed the jury not to provide the status of their deliberations to the court. Therefore, the trial court's mere receipt of this information was not error.

35

Initially, we note that Appellant's argument has focused upon the trial court's refusal to divulge the information that it received from the jury. Appellant has cited no authority and this Court has found no authority which supports Appellant's contention that it was error for the trial court to refuse to provide the information. Based upon the U.S. Supreme Court's precedent condemning the practice of the trial court's inquiring about a jury's numerical division, we find that the trial court's refusal to divulge information after its unsolicited receipt was proper. Revealing this information to counsel would have served no other purpose than to have exacerbated the jury's error in providing the information in the first instance.

We further agree with the Trussel court that the proper inquiry must focus on what action the trial court took once it received this information. Id. See, also, Sanders v. U.S. (C.A.5, 1969), 415 F.2d 621, 631-32; U.S. v. Cook (C.A.8, 1981), 663 F.2d 808, 809, fn. 3. Appellant, however, has made no argument regarding the trial court's actions after receiving the jury's numerical division. Rather, his sole contention is that the trial court erred simply by receiving the information and refusing to divulge that information to counsel. Having found no error in those actions, Appellant's second assignment of error is overruled.

(Doc. 26, RX 11, at 8-10; Villa, 2006 WL 2527964, at *4-*5.)

Although on direct appeal Villa's arguments were based entirely on state law (doc. 26, RX 9, at 10-13), the court of appeals' opinion referred to the Supreme Court decision in Brasfield v. United States. The question for this court, then, is whether the state court's decision involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. The state court's decision can not be found unreasonable simply because this court would consider the state decision to be erroneous or incorrect. Rather, the court must determine that the decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

The Sixth Circuit has summarized Brasfield as follows:

> In Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), the trial judge recalled the jury after it had deliberated for several hours and asked the jury what its numerical division was.  The Supreme Court reversed the federal conviction that followed this question, noting that the practice was "harmful" and "not to be sanctioned."  Id. at 450, 47 S.Ct. 135.  The procedure, the Court reasoned, "serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division.  Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive."  Id. at 450, 47 S.Ct. 135.
>
> The issue under Brasfield is whether the trial court inquired into, and learned, the numerical division of a deadlocked jury.

Lyell v. Renico, 470 F.3d 1177, 1182 (6th Cir. 2006).

The court in Lyell went on to point out that "the Supreme Court has recognized that the [Brasfield] decision involved an exercise of its supervisory power over the federal courts, not an exercise of its authority to construe the Due Process Clause."  Lyell, 470 F.3d at 1183 (citing Lowenfield v. Phelps, 484 U.S. 231, 239-240 (1988)); see also Cornell v. Iowa, 628 F.2d 1044, 1045 (8th Cir. 1980), cert. denied, 449 U.S. 1126 (1981) (Brasfield is not rule of constitutional construction).  The Sixth Circuit stated:  "Every court of appeals to address the issue, including ours, has declined to extend Brasfield to habeas claims premised on a violation of the federal Constitution."  Lyell, 470 F.3d at 1183 (citing cases); see also Montoya v. Scott, 65 F.3d 405, 412 (5th Cir. 1995), cert. denied, 517 U.S. 1133 (1996) (citing cases) (Brasfield does not apply in habeas context).

37

The respondent argues that, on habeas review, "the question is whether the Allen charge was coercive in the totality of the circumstances." (Doc. 26, at 25.) This was not an issue raised by Villa on direct appeal. See generally doc. 26, RX 9, at 11-13. As noted by the state court of appeals, "his sole contention [was] that the trial court erred simply by receiving the information and refusing to divulge that information to counsel." (Doc. 26, RX 11, at 10; Villa, 2006 WL 2527964, at *5.)

The respondent contends that any related claims have been procedurally defaulted. (Doc. 26, at 27.) Because the other issues were not raised on direct appeal, they would be barred by the Ohio rule of res judicata. Lott, 261 F.3d at 611-612; Rust, 17 F.3d at 160-161; Szefcyk, 77 Ohio St.3d 93, 671 N.E.2d 233 (syllabus); Perry, 10 Ohio St.2d at 176, 226 N.E.2d at 105-106 (syllabus, ¶9). Any constitutional question which was not raised and argued in the lower courts will not be considered by the Supreme Court of Ohio. Leroy v. Marshall, 757 F.2d 94, 99 (6th Cir.), cert. denied, 474 U.S. 831 (1985); Adams, 484 F.Supp.2d at 769. Although Villa attempted to raise the issue in his Rule 26(B) application (doc. 26, RX 28), that procedure is limited to claims of ineffective assistance of appellate counsel, and the state courts will not entertain other claims. Ohio R. App. P. 26(B)(1); Goines, 74 Ohio St.3d at 410, 659 N.E.2d 787.

Villa has failed to demonstrate that the state court's decision involved an unreasonable application of clearly established federal law. See generally doc. 28, at 7. Villa has not shown that the ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing

38

law beyond any possibility for fairminded disagreement." Harrington v. Richter,
131 S.Ct. 770, 786-787 (2011); see also Montgomery v. Bobby, 654 F.3d 668, 676
(6th Cir. 2011) (en banc).

The petition should not be granted on the basis of the second ground.


## V.  EVIDENCE OF FLIGHT

The fourth ground of the petition is that the trial court "erroneously admitted
hearsay evidence regarding an alleged flight and arrest in support of a flight
instruction while petitioner was precluded from presenting evidence in mitigation of
this alleged flight," and that the jury instructions related to this issue were
improper.  (Doc. 1, at § 12.D.)

On appeal, Villa argued that "the trial court erred when it instructed the jury
on flight and created an improper mandatory presumption of guilt" in violation of
the Constitution.  (Doc. 26, RX 9, at 16.)  He claimed that "there was no evidence
presented to the jury that he fled the jurisdiction of the court, other than the fact
that he was arrested in Florida."  Id.

The state  court of appeals addressed his claim(s) as follows:

> It is well established that evidence of flight is admissible as it tends to
> show consciousness of guilt. Sibron v. New York (1968), 392 U.S. 40,
> 66.  Further, a jury instruction on flight is appropriate if there is
> sufficient evidence in the record to support the charge. See United
> States v. Dillon (C.A.6, 1989), 870 F.2d 1125.  The decision whether to
> issue a flight instruction rests within the sound discretion of the trial
> court and will not be reversed absent an abuse of discretion. State v.
> Sims (1984), 13 Ohio App.3d 287, 289, 469 N.E.2d 554. Abuse of
> discretion requires more than simply an error in judgment; it implies

unreasonable, arbitrary, or unconscionable conduct by the court. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

The trial court gave the following jury instruction on flight:

> "In this case, there is evidence tending to indicate that the Defendant fled from the vicinity of the alleged crime. As the Defendant has not been charged with a crime for this fleeing, this evidence can only be considered for a limited purpose.

> "In this regard, you are instructed that flight, in and of itself, does not raise a presumption of guilt, but it may tend to show consciousness of guilt or a guilty connection with the crime.

> "If, therefore, you find that the Defendant did flee from the scene of the alleged crime, you may consider that circumstance when determining the guilt or innocence of the Defendant in this case.

> "This evidence cannot be considered for any other purpose.

> "Upon you alone rests the decision to determine what weight, if any, to place upon the evidence you find, if any, bearing upon this issue."

This Court has previously rejected Appellant's argument that the above instruction creates an improper presumption of guilt. See State v. Davilla, 9th Dist. No. 03CA008413, 2004-Ohio-4448. In Davilla, we held as follows:

> "Additionally, the instruction given did not create an improper conclusive presumption as Appellant argues. The United States Supreme Court defined a conclusive presumption as an irrebuttable direction to the jury which unconstitutionally shifts the burden of persuasion to the defendant. Sandstrom v. Montana (1979), 442 U.S. 510, 517, 99 S.Ct. 2450, 61 L.Ed.2d 39. However, the modifier "may" before "consider" supports the conclusion that no reasonable jury could have felt compelled to

40

presume guilt on the instruction given.  State v. Montgomery (1991), 61 Ohio St.3d 410, 415, 575 N.E.2d 167." Id. at ¶ 16, 575 N.E.2d 167.

Furthermore, we find that the State produced sufficient evidence to warrant the instruction on flight.  In its case in chief, the State presented evidence that Appellant was sought for questioning within a day of the crime.  Posters were circulated throughout the county offering a reward for information leading to his apprehension. Local law enforcement and the U.S. Marshal Service, however, were unable to locate Appellant in Lorain County.  Several weeks later, Appellant was arrested in Florida.  Accordingly, the trial court did not abuse its discretion in finding that the State had presented sufficient evidence that Appellant fled the jurisdiction following the crime.  Appellant's fourth assignment of error, therefore, is overruled.

(Doc. 26, RX 11, at 13-15; Villa, 2006 WL 2527964, at *6-*7.)

The respondent points out that Villa failed to present the evidentiary issue (hearsay) to the state court, thus it has been procedurally defaulted.  (Doc. 26, at 32.)  The court agrees, on the basis of the default analysis outlined earlier in this Report.[2]  Villa does not repeat his argument, made in the state court, that the instruction was not supported by sufficient evidence.  See generally doc. 1, at § 12.D.

As to the jury instruction itself, the respondent argues that allegedly faulty jury instructions do not warrant habeas relief, unless they deprive a defendant of a fundamentally fair trial and due process of law.  (Doc. 26, at 29, citing Henderson v.

---

[2]  In any event, the "clearly established rule" is that alleged errors of state law, "especially rulings regarding the admission or exclusion of evidence," are not generally within the purview of a federal habeas court.  Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988).  See also Estelle v. McGuire, 502 U.S. 62, 69-70 (1991); Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir.), cert. denied, 540 U.S. 930 (2003); Byrd v. Collins, 209 F.3d 486, 528 (6th Cir. 2000).

Kibbe, 431 U.S. 145, 154 (1977).)  The respondent contends that Villa must demonstrate that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  (Doc. 26, at 29, quoting Estelle, 502 U.S. at 72.)  The respondent argues that Villa has not demonstrated that the flight instruction violated state law, and has not showed how it deprived him of a fair trial.  Id. at 31.

Villa's Traverse does not address these arguments, asserting only procedural default is inapplicable for the reasons previously raised an discussed.  (Doc. 28, at 8.)

The issue is whether the state court decision concerning the jury instruction was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court.

The Supreme Court has emphasized that a habeas petitioner has a heavy burden to establish that an allegedly erroneous jury instruction would invalidate a state court's judgment.  Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  The Court has ruled that the fact that an instruction was allegedly incorrect under state law is not a basis for habeas relief.  Durr v. Mitchell, 487 F.3d 423, 446 (6th Cir. 2007), cert. denied, 552 U.S. 1261 (2008); Poindexter v. Mitchell, 454 F.3d 564, 586-587 (6th Cir. 2006) (quoting Estelle, 502 U.S. at 71-72).  Such errors are reviewable in habeas only if they deprived the petition of constitutional due process.  Durr, 487 F.3d at 446; Poindexter, 454 F.3d at 586-587.

In Henderson, the Supreme Court stressed that the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Drake v. Superintendent, Trumbull Corr. Inst., 106 F.3d 400, 1997 WL 14422, at *6-*7 (6th Cir. 1997) (TABLE, text in WESTLAW) (quoting Henderson, 431 U.S. at 154); see also Durr, 487 F.3d at 446-447; Poindexter v. Mitchell, 454 F.3d at 586-587. This goes beyond whether the instruction is merely "undesirable, erroneous, or even 'universally condemned.'" Henderson, 431 U.S. at 154 (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)). The Supreme Court has admonished that the category of alleged due process violations that violate fundamental fairness has been very narrowly defined. Estelle, 502 U.S. at 73.

Reviewing the state court's decision in light of the above, this court cannot find that the decision was contrary to, or involved an unreasonable application of, clearly established federal law. Villa has not demonstrated that the challenged instruction violates due process. This court agrees with the state court of appeals that the instruction as given by the trial court does not create an improper presumption of guilt. The petition should not be granted on the basis of the fourth ground.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

The ninth ground of the petition is ineffective assistance of trial counsel. The facts supporting this ground are stated as:

>Counsel failed to confront Tina Curry and present to the jury, her exculpatory 911 taped statement; present evidence of witness coercion/influence; present evidence in mitigation of petitioner's alleged flight; inquire into the jury tour and contact with jurors and spectators on the elevator; to investigate and obtain evidence/witnesses in regards to: establishing petitioner's actual innocence; ballistic tests run by Detective Moskal; the crime scene; Patricia Dancik's computer identification ; and witnesses describing various versions/ descriptions of the incident/suspects; and by failing to object to several prejudicial errors.

(Doc. 1, at p. A-2.)  The respondent argues that the state court properly resolved the claims raised by Villa.  (Doc. 26, at 38-41.)

On direct appeal, Villa argued several instances of ineffective assistance of trial counsel.  First, he claimed that "counsel's voir dire examination of the prospective jury panel was deficient and lacked the scope necessary to guarantee that a fair and impartial jury was impaneled" in conformity with the U.S. and Ohio Constitutions.  (Doc. 26, RX 9, at 26.)  Villa also asserted that "trial counsel was ineffective for failing to object to the procedure employed by the trial court in conducting its Crim.R. 16(B)(1)(g) inspection of witness statements."  Id.  Thirdly, Villa claimed "deficient performance in trial counsel's failure to object to various instances of prosecutorial misconduct."  Id. at 27.

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel."  Joshua v. DeWitt, 341 F.3d 430, 437 (6th Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). The Sixth Circuit discussed the general standard for ineffective assistance of counsel in Monzo v. Edwards:

44

>To establish ineffective assistance of counsel under Strickland, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant.  Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

Monzo, 281 F.3d at 579 (internal citations omitted).  See generally Strickland v. Washington, 466 U.S. 668, 689 (1984) (two-part test).

In the habeas context, this court considers petitioner's ineffective assistance claim "within the more limited assessment of whether the state court's application of Strickland to the facts of this case was objectively unreasonable."  Washington v. Hofbauer, 228 F.3d 689, 702 (6th Cir. 2000).  The appellate court addressed this claim applying the two-part test set forth in Strickland, therefore this court must determine whether the state court's application of Strickland was objectively unreasonable.

The Supreme Court has recently affirmed in several cases that a habeas court must approach the state court's rulings in a highly deferential manner.  The Supreme Court stated in Harrington v. Richter that the "pivotal question" of whether the state court's application of Strickland standard was unreasonable is different from simply deciding whether counsel's performance fell below Strickland's standard.  Richter, 131 S.Ct. at 785.  The focus on habeas review is "not whether counsel's actions were reasonable," rather, the question is "whether there

45

is any reasonable argument that counsel satisfied Strickland's deferential

standard." Richter, 131 S.Ct. at 788; Premo v. Moore, 131 S.Ct. 733, 740 (2011).

The state court of appeals addressed Villa's claim(s) as follows:

A claim of ineffective assistance of counsel requires Appellant to
satisfy a two prong test. First, he must prove that trial counsel's
performance was deficient. Strickland v. Washington (1984), 466 U.S.
668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. That is, Appellant "must
show that counsel made errors so serious that counsel was not
functioning as the 'counsel' guaranteed Appellant by the Sixth
Amendment." State v. Srock, 9th Dist. No. 22812, 2006-Ohio-251, at ¶
20, citing Strickland, 466 U.S. at 687. Second, Appellant must
"demonstrate that he was prejudiced by his trial counsel's deficient
performance." Srock at ¶ 21. Prejudice entails "a reasonable
probability that, were it not for counsel's errors, the result of the trial
would have been different." State v. Bradley (1989), 42 Ohio St.3d
136, 538 N.E.2d 373, paragraph three of the syllabus, certiorari denied
(1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768. Further, this
Court need not analyze both prongs of the Strickland test if we find
that Appellant failed to prove either. State v. Ray, 9th Dist. No.
22459, 2005-Ohio-4941, at ¶ 10. Finally, Appellant must overcome the
strong presumption that licensed attorneys in Ohio are competent.
State v. Smith (1985), 17 Ohio St.3d 98, 100, 477 N.E.2d 1128.

Voir Dire

Appellant first asserts that his counsel did not thoroughly question
jurors about their exposure to wanted posters containing his
photograph. We disagree.

Initially, we note that "[t]he conduct of voir dire by defense counsel
does not have to take a particular form, nor do specific questions have
to be asked." State v. Evans (1992), 63 Ohio St.3d 231, 247, 586
N.E.2d 1042. During voir dire, the trial court questioned the jurors
about their possible exposure to pretrial publicity. Appellant's counsel
then questioned the sole juror who had indicated that he vaguely
remembered a newspaper article regarding the incident. It is unclear
what further questions Appellant's counsel could have asked once
jurors indicated that they had not been exposed to pretrial publicity.
Accordingly, we find that Appellant's counsel did not err in failing to

question the jurors about pretrial publicity once the jurors had denied any exposure to such publicity.

### Crim.R. 16 Procedure

Appellant next asserts that his counsel was ineffective in permitting the trial court to determine that certain incident reports were not statements within the meaning of Crim.R. 16. Specifically, Appellant asserts that his counsel erred when he failed to object when the trial court made its determination without permitting Appellant's counsel an in camera inspection of the reports. We disagree.

As noted above, the trial court properly made an initial determination regarding whether a producible statement existed. Daniels, 1 Ohio St.3d at syllabus. Above we found that the trial court properly determined that no producible statement existed. See, supra, at ¶ 27. Appellant's counsel, therefore, did not err in failing to object to the trial court's determination that no in camera inspection was warranted.

### Prosecutorial Misconduct

Finally, Appellant asserts that his counsel was ineffective for failing to object to several instances of prosecutorial misconduct. We disagree.

When examining alleged prosecutorial misconduct this Court must determine whether the remarks are improper, and if so, whether they prejudicially affected Appellant's substantial rights. State v. Lott (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293. Appellant asserts that the State improperly commented on a crime that was unrelated to the crimes for which Appellant was on trial; improperly commented on the compensation his witness received; and improperly commented on Appellant's character. We find that the State engaged in no improper conduct.

A review of the record demonstrates that the State used the analogy of a drive-by shooting to demonstrate the rationale of the doctrine of transferred intent. Accordingly, the State utilized an analogy to demonstrate to the jury a technical legal concept. Nothing about the State's use of such an analogy was improper, nor did the State attempt to attribute such a crime to Appellant.

Appellant further asserts that the State committed misconduct by stating that Dr. Shulman was paid for his testimony and had an interest in the outcome of the case. Initially, we note that the State never commented that Dr. Shulman had an interest in the outcome of the case. Rather, the prosecution commented on the evidence, pointing out that Dr. Shulman was paid for his testimony and had always testified on behalf of the defense. Appellant has cited no authority and this Court has no authority that would make such commentary improper.

Finally, Appellant asserts that the prosecutor engaged in misconduct when he discussed Appellant's flight from the jurisdiction. Again, however, the evidence supports the statements made by the prosecution. As noted above, the State produced evidence that Appellant fled the jurisdiction following the crime. Accordingly, the prosecutor commented on the evidence before the jury and his actions were not in any manner improper.

Having found that the State did not engage in any misconduct, we find that Appellant's counsel was not ineffective for failing to object to the above comments. Furthermore, as we have found no merit in Appellant's other contentions regarding his counsel, Appellant has failed to demonstrate that his trial counsel was deficient. Strickland, 466 U.S. at 687. Accordingly, Appellant's seventh assignment of error is overruled.

(Doc. 26, RX 11, at 20-24; Villa, 2006 WL 2527964, at *10-*12.)

In his traverse, Villa contends that he received ineffective assistance of

counsel, stating:

Tina's 911 tape is exculpatory, and contradicts her testimony on all accounts see 911 filed on July 2, 2004. Counsel Ortner was prevented from addressing Tina Curry's 911 tape on direct appeal, despite his attempts. [.....]

The fact that Sgt. Carpentiere's interview of Tina Curry was never reviewed and presented in the record by the courts (Trial and Appellate) demonstrates an inadequate 16(B)(1)(g) process, which Ohio has repeatedly held to violate due process, and demonstrates ineffectiveness.

(Doc. 28, at 11-12.)  In addition, Villa again raises the argument that the state should be barred from raising the issue of procedural default.  Id. at 12.

As to those instances of alleged ineffective assistance which were raised on direct appeal, Villa has failed to demonstrate that the state court's application of Strickland was objectively unreasonable.  Villa has not shown that the ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 131 S.Ct. at 786-787.

Villa also raises several other claims of alleged ineffective assistance which were not raised on direct appeal.  See generally doc. 1, at p. A-2.  Those claims which were not raised on direct appeal would be barred by the Ohio rule of res judicata.  Lott, 261 F.3d at 611-612; Rust, 17 F.3d at 160-161; Szefcyk, 77 Ohio St.3d 93, 671 N.E.2d 233 (syllabus); Perry, 10 Ohio St.2d at 176, 226 N.E.2d at 105-106 (syllabus, ¶9).  Res judicata would bar Villa from litigating an issue that could have been raised on direct appeal.  Perry, 10 Ohio St.2d at 180, 226 N.E.2d at 108.  See also Seymour, 224 F.3d at 555 (claims must be raised on direct appeal if possible; otherwise, res judicata bars litigation in subsequent proceedings).  Those claims are  procedurally defaulted.

Villa attempted to raise several of these arguments in his petition for postconviction relief.[3]  (Doc. 26, RX 15, RX 20.)  The trial court denied the petition

---

[3]  In Ohio, where a person convicted of criminal offense claims that there was a violation of his constitutional rights, and the evidence in support of that claim is

as untimely, which judgment was upheld by the court of appeals.  (Doc. 26, RX 23,

27.)  Those claims are barred as procedurally defaulted.  See, e.g., Awkal v.

Mitchell, 613 F.3d 629, 646 (6th Cir. 2010), cert. denied, 131 S.Ct. 1002 (2011).

Villa has failed to demonstrate that the state court's application of Strickland

was objectively unreasonable.  The petition should not be granted on the basis of

the ninth ground.


## VII.  DUE PROCESS VIOLATION

The tenth ground of the petition is that Villa "was denied due process and

right to trial by an impartial jury."  (Doc. 1, at p. A-2.)  The "supporting facts" are

given as:

> The State failed to meet its burden on the stringent elements of the
> offenses, and the jury: lost its way and failed to apply the law to the
> facts; and did not weigh the evidence under the appropriate standard.

(Doc. 1, at p. A-2.)  It is unclear exactly what constitutional violation Villa is

alleging, but the court must liberally construe his petition.  Urbina, 270 F.3d at

295.  On direct appeal, Villa raised these issues as separate assignments of error:

the manifest weight of the evidence as his fifth assignment of error, and sufficiency

---

not contained  in the trial court record, that person may file a petition for
postconviction relief in the state trial court.  Gibson v. Wolfe, No.  2:04CV272, 2006
WL 1028168, at *7 (S.D. Ohio Apr. 17, 2006); State v. Mayrides, No. 03AP-347,
2004 WL 628234, at *2 (Ohio Ct. App. Mar. 31, 2004); Ohio Rev. Code §
2953.21(A)(1)(a).  The postconviction procedure is considered "a collateral civil
attack on a criminal judgment, not an appeal of the judgment."  Mayrides, 2004 WL
628234, at *2.

of the evidence as his sixth assignment of error.  (Doc. 26, RX 9, at 17-25.)  His tenth ground can be read to raise both those theories.

The state court of appeals considered his two separate assignments of error together.  The state court, utilizing a hybrid type of review which is apparently in common use in the Ninth District, rejected his claims.  (Doc. 26, RX 11, at 15-20; Villa, 2006 WL 2527964, at *8-*10.)

The Supreme Court of Ohio has stated that:  "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."  State v. Thompkins, 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546 (1997).  Whether the evidence is legally sufficient to sustain a verdict is a question of law.  Id.  A manifest weight of the evidence claim concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."  Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d at 546.  When reviewing a weight of the evidence claim, an appellate court sits as a "thirteenth juror," and reviews the jury's resolution of conflicting testimony.  See Tibbs v. Florida, 457 U.S. 31, 42 (1982).  Thompkins was intended to signal Ohio appellate courts "that it is improper to apply the same standard of review for questions involving the weight and sufficiency of evidence."  Thompkins, 78 Ohio St.3d at 390, 678 N.E.2d at 549 (Cook, J., concurring).

Despite the admonition of Thompkins, the Ohio Court of Appeals for the Ninth District conflates the review of these two "quantitatively and qualitatively

51

different" legal concepts.  An oft-cited case provides the type of review applied in that district:

> Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency.  Thus, a determination that [the defendant]'s conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.  In that regard, we will first look to see if [the defendant]'s conviction is supported by the weight of the evidence.

State v. Roberts, No. 96CA006462, 1997 WL 600669, at *2 (Ohio Ct. App. Sept. 17, 1997).  In fact, this was the standard used by the court of appeals in this case:  "we address Appellant's challenge to the manifest weight of the evidence first, as it is dispositive of his claim of sufficiency."  (Doc. 26, RX 11, at 16; Villa, 2006 WL 2527964, at *8.)  After a discussion of the "substantial evidence to justify Appellant's convictions," the court concluded:

> . . . this Court cannot say that the jury clearly lost its way in convicting Appellant of aggravated murder.  Having disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge.  See Roberts, supra, at *2.

(Doc. 26, RX 11, at 20; Villa, 2006 WL 2527964, at *10.)  This type of analysis would appear to be in conflict with the state high court's guidance "that it is improper to apply the same standard of review for questions involving the weight and sufficiency of evidence."  Thompkins, 78 Ohio St.3d at 390, 678 N.E.2d at 549 (Cook, J., concurring).

There are double jeopardy concerns, not raised in this case, which argue against this type of review.  For example, the U.S. Supreme Court has found that a

reversal based on the weight of the evidence does not preclude retrial on double jeopardy principles.  Tibbs, 457 U.S. at 43-44.  A reversal based on the insufficiency of the evidence, on the other hand, absolutely shields the defendant from retrial.  Id. at 41.

In any event, this court does not rule on the basis of whether the Ohio state courts have applied state law correctly, or consistently.  Rather, the question before this habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court.

### A.  Manifest Weight of the Evidence

The respondent contends that the manifest weight of the evidence claim is not cognizable in habeas.  (Doc. 26, at 41-42.)

A manifest weight of the evidence claim concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."  Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d at 546. In other words, the "weight of the evidence" indicates the "persuasiveness of some evidence in comparison with other evidence."  Black's Law Dictionary (9th ed. 2009).  When reviewing a weight of the evidence claim, an appellate court sits as a "thirteenth juror," and reviews the jury's resolution of conflicting testimony.  Tibbs, 457 U.S. at 42.  In the federal habeas context, this is outside the proper role of the habeas court.  The jury is the sole finder of fact in a jury trial, and the jury

determines the credibility of witnesses.  United States v. Adamo, 742 F.2d 927, 934-935 (6th Cir. 1984), cert. denied, 469 U.S. 1193 (1985).

Moreover, a claim that Villa's conviction was against the manifest weight of the evidence is a state law issue, and a federal habeas court has no power to grant habeas relief on the basis that a state conviction is against the weight of the evidence.  Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985), cert. denied, 476 U.S. 1123 (1986); Cameron v. Birkett, 348 F.Supp.2d 825, 838 (E.D. Mich. 2004) (citing cases).  The petition should not be granted on the tenth ground on the basis of the manifest weight of the evidence.


## B.  Sufficiency of the Evidence

The respondent argues that the finding of the state court on this issue was supported by the evidence in the record.  (Doc. 26, at 42-45.)  The respondent points out that a conviction may rest on either sufficient direct evidence or sufficient circumstantial evidence of guilt.  Id. at 42 (citing cases).

Under U.S. Supreme Court precedent, a sufficiency of the evidence claim is reviewed by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Bagby v. Sowders, 894 F.2d 792, 794 (6th Cir.) (en banc), cert. denied, 496 U.S. 929 (1990).

54

The state court did not apply the Jackson v. Virginia sufficiency of the evidence standard, but rather examined the claims under a manifest weight of the evidence standard, stating that an appellate court:

> "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

(Doc. 9, RX 11, at 16-17; Villa, 2006 WL 2527964, at *8.)

A review based on a manifest weight of the evidence standard, which concerns the inclination of the greater amount of evidence to support one side of an issue rather than another, Thompkins, 78 Ohio St.3d at 387, 678 N.E.2d at 546, is not "necessarily" dispositive of whether that same evidence satisfied the state's burden on the essential elements of the crime as a matter of law.  See generally Jackson, 443 U.S. at 319.

Thus, because Jackson was not applied by the state court, this court must determine whether the state court's decision was contrary to U.S. Supreme Court precedent.  A state court decision is "contrary to" clearly established Supreme Court precedent if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent."  Price, 538 U.S. at 640 (quoting Williams, 529 U.S. at 405-406).

55

Under Jackson, the habeas court does not make its own subjective determination of guilt or innocence.  Russell v. Anderson, No. 1:07CV3434, 2008 WL 4534144, at *3 (N.D. Ohio Oct. 6, 2008) (citing Herrera v. Collins, 506 U.S. 390, 402 (1993)); Talley v. Hageman, 619 F.Supp.2d 407, 416 (N.D. Ohio 2008) (citing Herrera).  This court does not "substitute its determination of guilt for that of the factfinder and may not weigh the credibility of the witnesses."  Dover v. Warden, Belmont Corr. Inst., No. 5:08CV2130, 2009 WL 1940728, at *14 (N.D. Ohio July 2, 2009).  The Supreme Court recently emphasized that "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial."  Cavazos v. Smith, 132 S.Ct. 2, 4 (2011) (per curiam).

The Supreme Court stressed that Jackson "unambiguously instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  Cavazos, 132 S.Ct. at 6 (quoting Jackson, 443 U.S. at 326).  It is the responsibility of the trier of fact "to reasonably resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Nali v. Phillips, 630 F.Supp.2d 807, 816 (E.D. Mich. 2009).

A sufficiency of the evidence claim "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir.), cert. denied, 537 U.S. 980 (2002) (quoting Jackson, 443 U.S. at 324 n.16).  Thus, the federal court must look to state law to

56

determine the elements of the crime.  Cameron v. Birkett, 348 F.Supp.2d 825, 838-839 (E.D. Mich. 2004) (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), cert. denied, 528 U.S. 1170 (2000)).  Although in a different context, the state court of appeals did provide the elements of the crimes charged.  (Doc. 9, RX 11, at 17-18; Villa, 2006 WL 2527964, at *9.)

> On direct appeal, Villa put forward the following argument, in part:
>
>> Here, the evidence does not establish beyond a reasonable doubt that Appellant committed the charged offense.  Other than witness identification testimony nothing implicated appellant as the offender in this case.  The state presented no forensic evidence whatsoever to connect the shooting with Appellant.  While the state presented evidence speculating as to the type of weapon used, and spent shell casings, the weapon was never produced, nor were the shell casings tied to appellant.  Further, the state presented no physical evidence, either finger prints, hair, blood, fiber, or D.N.A. to place Appellant in Gils's bar on the night in question.

(Doc. 26, RX 9, at 24.)  Villa also pointed to alleged inconsistencies in the witness statements.  Id.

Villa did not provide any case law or other authority which would support his implicit argument that the elements of the charged offense(s) require forensic or physical evidence to support a conviction.  See, e.g., Hilliard v. Hudson, 599 F.Supp.2d 921, 932 (N.D. Ohio 2009) (sufficient evidence for conviction where eyewitnesses linked defendant to crime, despite lack of physical evidence).

The state court pointed out that Villa "has not cited to a single portion of the record to support his claims," as required under the state's appellate rules.  (Doc. 9, RX 11, at 18; Villa, 2006 WL 2527964, at *9.)  The court stated that "our review of

the record demonstrates that the State introduced substantial evidence to justify Appellant's convictions.  Five separate eyewitnesses identified Appellant."  (Doc. 9, RX 11, at 18; Villa, 2006 WL 2527964, at *9.)  The court pointed out why the jury could have found the witnesses credible.  Id.  The state appellate court held that the evidence presented at trial was sufficient to convict Villa of the charges against him.  The record supports its conclusion.

Although the petition claims that the state "failed to meet its burden on the stringent elements of the [charged] offenses" at trial, Villa fails to identify which element(s) of which offense(s) he believes the state failed to meet.  See generally doc. 1, at p. A-2; doc. 28, at 12.  On appeal, he had simply claimed that the evidence did not establish beyond a reasonable doubt that he had committed the charged offense.  As mentioned earlier, it is Villa's burden to establish that the state court decisions were contrary to, or involved an unreasonable application of, clearly established federal law.  Skaftouros, 667 F.3d at 158; Hyberg , 2011 WL 3605793, at *2; Cockream, 2010 WL 2587943, at *3.  Villa has failed to carry that burden.  Therefore, this court cannot find that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law.

The petition should not be granted on the tenth ground on the basis of the sufficiency of the evidence.

## VIII.  IDENTIFICATION EVIDENCE

The eleventh ground of the petition is that Villa "was denied Due Process,

Right to a Fair Trial, and Confrontation Rights." (Doc. 1, at p. A-3.)  The

"supporting facts" are given as:.

> The trial court allowed the State to present impermissibly suggestive
> pretrial/trial identification evidence, which was prejudicially
> unreliable, and was not held to any standard of cogency or verification,
> and which would have been excluded were it not for inappropriate
> application of the law to erroneous factual findings by the Court. This
> evidence was not the product of independent observation.

(Doc. 1, at p. A-3.)  The respondent asserts, in detail, that the evidence of

identification of Villa was reliable.  (Doc. 26, at 46-54.)

On direct appeal, Villa attacked the trial court's denial of his motion to

suppress "improperly suggestive pretrial identification."  (Doc. 26, RX 9, at 4.)  He

argued that "the procedure the police used to obtain the identification was

inherently suggestive."  Id. at 4-5.  He argued that the Due Process Clause of the

Fifth Amendment prohibits the introduction of identification evidence when the

technique sued to gather the evidence is "unnecessarily suggestive and conducive to

irreparable mistaken identification."  Id. at 5 (citing Stovall v. Denno, 388 U.S. 293,

302 (1967).)  Villa claimed that the photo array used by the police was improper,

and that "his photo is of a different texture [than] the other photos and sticks out as

if Appellant were a different color or ethnic background."  (Doc. 26, RX 9, at 9.)

The court of appeals subjected this claim to an extensive analysis:

> Ohio has adopted the United States Supreme Court's two-part analysis
> for assessing a photo array: (1) whether the identification was

59

unnecessarily suggestive of the suspect's guilt, and (2) whether the identification was ultimately unreliable under the circumstances.  See State v. Waddy (1992), 63 Ohio St.3d 424, 438-39, 588 N.E.2d 819. The United States Supreme Court set forth the following standard of review:

> "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  Simmons v. United States (1968), 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247.

The Court offered the following rationale for such a high threshold:

> "The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error."  Id.

In addition, the Ohio Supreme Court has provided the factors this Court must examine to determine the reliability of the identification.

> "In order to determine the reliability of the identification, we must consider (1) the witness's opportunity to view the defendant at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification."  (Citations omitted.) State v. Davis (1996), 76 Ohio St.3d 107, 113, 666 N.E.2d 1099.

In his brief, Appellant asserts as follows:

> "The fact of the matter is that Appellant's photo is of a different texture then (sic) the other photos and sticks out as if Appellant were a different color or ethnic background."

We disagree.

60

The photo array contains six photos.  Each individual in the array appears to be in the same age range as Appellant and the same ethnicity.  While the lighting in Appellant's photo is different, such is true of all of the photos.  None of the photos has an identical background or lighting, nor is there any such requirement in the law.  Accordingly, we are not persuaded that the array was unduly suggestive.

Assuming arguendo that the array was unduly suggestive, this Court finds that the witnesses' identifications were reliable under the totality of the circumstances.  As an initial matter, we note that Appellant has not independently addressed the admissibility of the identifications of the five eyewitnesses.  Furthermore, he has not cited to any portion of the record to support his broad claims that all of the identifications were unreliable.  See App.R. 16(A)(7).  This Court, therefore, is permitted to disregard his argument in its entirety.  Loc.R. 7(F).  "If an argument exists that can support [Appellant's contentions], it is not this court's duty to root it out."  Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 & 18673, at *8.

A review of the record also demonstrates that Appellant's claim lacks merit.  The following facts support this Court's conclusion: 1) each of the five eyewitnesses testified that the porch of the bar where Appellant fought with Hawthorne and the interior of the bar where Appellant shot Collins were well lit; 2) the eyewitnesses testified that they each had a clear, unobstructed view of Appellant when they saw his face; 3) each witness was certain of his or her identification of Appellant as the perpetrator; 4) each of the witness' initial descriptions described Appellant in a fairly accurate manner, i.e., each witness properly described Appellant as Hispanic, described his height within a few inches of Appellant's actual height, and adequately described his build; and 5) each of the witnesses identified Appellant within two weeks of the crime, several within 48 hours of the crime.  The eyewitnesses' identifications, therefore, were reliable under the totality of the circumstances.

The trial court did not err in permitting testimony regarding the identification of Appellant by the eyewitnesses.  Appellant's first assignment of error is overruled.

(Doc. 9, RX 11, at 5-8; Villa, 2006 WL 2527964, at *2-*4.)

The state court of appeals explicitly applied the analysis set forth in the U.S. Supreme Court's decision in Simmons v. United States, therefore the question before this court is whether the state court's decision involved an unreasonable application of clearly established federal law.  The state court's decision can not be found unreasonable simply because this court would consider  the state decision to be erroneous or incorrect.  Rather, the court must determine that the decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

The court does not undertake a de novo review, in a case where the state court addressed the merits of the constitutional claim.  See, e.g., Price, 538 U.S. at 638-639.  Rather, Villa must show that the state court decision was either contrary to, or an unreasonable application of, clearly established federal law, or was based upon an unreasonable determination of the facts.  Id. at 639.

An identification will violate a defendant's right to due process if the identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  Simmons v. United States, 390 U.S. 377, 384 (1968); Howard v. Bouchard, 405 F.3d 459, 469 (6th Cir. 2005), cert. denied, 546 U.S. 1100 (2006).  "It is the likelihood of misidentification which violates a defendant's right to due process."  Howard, 405 F.3d at 469 (quoting Neil v. Biggers, 409 U.S. 188, 198 (1972)).  It is the petitioner's burden of proof to show that the procedure was unduly suggestive.  Tipton v. Carlton, No. 06-5496, 2008

WL 5397785, at *4 (6th Cir. Dec. 29, 2008), cert. denied, 130 S.Ct. 279 (2009) (citing Ledbetter v. Edwards, 35 F.3d 1062, 1071 (6th Cir. 1994)).

An improper photo array "steer[s] the witness to one suspect or another, independent of the witness's honest recollection," and is thus unduly suggestive. Williams v. Lavigne, No. 05-1398, 2006 WL 3780364, at *3 (6th Cir. Dec. 22, 2006), cert. denied, 552 U.S. 910 (2007) (Clay, J., concurring in part) (quoting Wilson v. Mitchell, 250 F.3d 388, 397 (6th Cir. 2001)).  In other words, suggestiveness generally depends "upon whether the witness's attention was directed to a suspect because of police conduct."  Howard, 405 F.3d at 469-470.

The state court's factual findings regarding the physical characteristics of the array are entitled to a presumption of correctness. Tipton, 2008 WL 5397785, at *5 (citing Wilkins v. Timmerman-Cooper, 512 F.3d 768, 773 (6th Cir. 2008)).  After reviewing the photo array, and discussing Villa's assertions, the state court of appeals found that the photo array was not unduly suggestive.  (Doc. 9, RX 11, at 6; Villa, 2006 WL 2527964, at *3.)  This court does not find that determination to be objectively unreasonable.

If the petitioner meets the burden of showing impermissible suggestiveness, then the court will evaluate the reliability of the identification under the totality of the circumstances.  Tipton, 2008 WL 5397785, at *4; Haliym v. Mitchell, 492 F.3d 680, 704 (6th Cir. 2007); United States v. Sullivan, 431 F.3d 976, 985 (2005)  If there is no showing of an impermissibly suggestive process, the court need not

assess the reliability of the identification.  Williams v. Lavigne, 2006 WL 3780364, at *3 (Clay, J., concurring) (citing Neil v. Biggers, 409 U.S. at 199).

Even where the identification procedure is shown to be impermissibly suggestive, if the identifications are reliable, they will be admissible.  Grayer v. McKee, No. 04-1335, 2005 WL 2186115, at *7 (6th Cir. Sept. 9, 2005), cert. denied, 547 U.S. 1059 (2006) (citing Manson v. Brathwaite, 432 U.S. 98, 114 (1977)). "Reliability is the linchpin in determining the admissibility of identification testimony."  Howard, 405 F.3d at 469 (quoting Manson, 432 U.S. at 114 (1977)).  In assessing reliability, the court considers:

> . . . the totality of the circumstances, including the factors described in Manson and Biggers: (1) the opportunity of the witness to view the defendant at the initial observation; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty shown by the witness at the pretrial identification; and (5) the length of time between the initial observation and the identification.

Howard, 405 F.3d at 472 (citing Manson, 432 U.S. at 114, Neil v. Biggers, 409 U.S. at 199-200); see also Haliym, 492 F.3d at 704; Grayer, 2005 WL 2186115, at *7.

Here, after discussing the relevant factors, the state court of appeals found that the witnesses' identifications were reliable under the totality of the circumstances.  (Doc. 9, RX 11, at 6-7; Villa, 2006 WL 2527964, at *3.)  This court does not find that determination to be objectively unreasonable.

Villa has failed to demonstrate that the state court's decision involved an unreasonable application of clearly established federal law.  See generally doc. 28, at 12.  Villa has not shown that the ruling of the state court "was so lacking in

64

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S.Ct. at 786-787; see also Montgomery , 654 F.3d at 676.

The petition should not be granted on the basis of the eleventh ground.


## IX.  SUMMARY

The petition for a writ of habeas corpus should be denied.

The first, third, fifth, sixth (in part), seventh, eighth, twelfth, and thirteenth grounds of the petition have been procedurally defaulted.  The petition should not be granted on the basis of these grounds.

Although the sixth ground was presented to the state courts, in part, Villa has failed to carry his burden to show that the state court's decision on that issue was contrary to clearly established federal law.  The petition should not be granted on the basis of the sixth ground.

As to the second ground, the tenth ground alleging insufficiency of the evidence, and the eleventh ground, Villa failed to demonstrate that the state court's decision involved an unreasonable application of clearly established federal law. The petition should not be granted on the basis of the ninth ground, because Villa has failed to demonstrate that the state court's application of Strickland was objectively unreasonable.

The petition should not be granted on the basis of the fourth ground, because Villa failed to demonstrate the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law.

The thirteenth ground, alleging a claim of cumulative errors, and the tenth ground based on the manifest weight of the evidence, are not cognizable in a habeas proceeding.

## RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be denied.


Dated:   March 27, 2012               /s/ Kenneth S. McHargh
                                     Kenneth S. McHargh
                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).